

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ROSENTHAL COLLINS GROUP, LLC, )
an Illinois Limited Liability Co., )
                              )
         Plaintiff, )
                              )
        vs. )      No. 05 C 4088
                              )
TRADING TECHNOLOGIES )
INTERNATIONAL, INC., a Delaware )
corporation, )
                              )
        Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Rosenthal Collins Group, LLC (RCG), brought an action against Trading Technologies International, Inc. (TT), requesting a declaratory judgment of patent invalidity, and non-infringement and patent misuse by defendant. In the same action plaintiff alleged attempt to monopolize and illegal contract, combination or conspiracy in restraint of trade in violation of the Sherman Act, 15 U.S.C. §§ 1, 2, unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125, and deceptive business practices and unfair competition in violation of state laws and common law. Defendant moves to dismiss all claims (except for the declaratory judgment action for non-infringement) for failure to state a claim upon which relief can be granted. For the reasons set forth below, we grant in part and deny in part defendant's motion to dismiss.

## BACKGROUND

In reviewing a motion to dismiss under FED. R. CIV. P. 12(b)(6), we must accept the complaint's well-pleaded factual allegations as true, including the inferences reasonably drawn from them. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir.1990). Under Rule12(b)(6) analysis, we will not look beyond the four corners of the complaint in determining whether

plaintiff has stated a claim. <u>Palda v. General Dynamics Corp.</u>, 47 F.3d 872, 875 (7th Cir.1995). Documents attached to a defendant's pleadings cannot be considered without converting the motion to dismiss into a motion for summary judgment, except for documents referred to in plaintiff's complaint and central to his claim. <u>Wright v. Associated Ins. Companies Inc.</u>, 29 F.3d 1244, 1248 (7th Cir.1994). Therefore, we take the following facts from the plaintiff's complaint and accompanying exhibits.

Defendant currently holds two U.S. patents, nos. 6,766,304 ('304) and 6,772,132 ('132), both of which relate to computer software used for electronic trading in the futures market. Plaintiff alleges that "[s]ince obtaining these patents, TT has embarked on an anticompetitive campaign to monopolize the electronic futures trading market and control order flow and market internalization of these markets" (cplt., ¶ 9). Plaintiff brings this suit as its response to defendant's actions and proposed actions regarding these patents.

Plaintiff claims that defendant currently controls 50 to 70 per cent of the electronic volume share in the largest four futures trading exchanges. Through aggressive and allegedly illegal techniques of enforcing its current patents and the filing of more than eighty additional patent applications to interface with the current technology, plaintiff alleges that defendant "intends to control 100% of the market order flow" (cplt.,¶ 17). Plaintiff has identified several specific instances, which taken together, allegedly show illegal conduct in defendant's use of its patents.

First, in a press release entitled,"TT's Open Letter to the Futures Industry" (open letter) defendant proposed a royalty payment system for the use of defendant's patented technology in electronic futures trading. In exchange for unlimited access to defendant's technology for any participating trading exchange and defendant's forfeiture of its right to bring patent infringement suits, defendant proposed a 2.5 cents per side charge for every

future and future option transaction that occurs in the participating exchange permanently (cplt., ex.1, p.) (2.5 cent proposal). Plaintiff asserts that this proposal is evidence of an intent to monopolize, in violation of the Sherman Act, § 2 (cplt., ¶ 11) ("TT's demand of a 2.5-cent royalty for every electronic trade would have increased the costs of futures trading for all exchange members. The flat rate royalty for all trades would also preclude competition and discourage innovation because exchange members would be paying a fee regardless of whether they used TT's patented software, thus discouraging the use of alternative software which would require an additional fee"). Additionally, in the same press release defendant stated, "By making a premier order-entry system commercially available, TT has truly leveled the playing field among market participants through our innovative technology" (cplt., ex.1, p.1). Plaintiff contends that this statement, viewed in light of the allegation that defendant has not introduced its technology or proposal to level the playing field, but rather to slant the playing field to its advantage, violates the false advertising section of the Lanham Act.

Second, plaintiff points to the various patent infringement lawsuits defendant has brought to protect its patented technology. Plaintiff claims that although the targeted futures exchanges rejected defendant's 2.5 cent proposal, "TT sought another avenue to pressure the major exchanges to pay the flat rate fee on every trade and prevent customers from having a choice regarding electronic futures trading software," namely, patent infringement suits, threatened suits, and unfair settlement proposals (cplt., ¶¶ 12-14). According to plaintiff's complaint, defendant is also leveraging its existing license agreements to pressure firms into supporting the 2.5 cent proposal (cplt., ¶¶ 20-18). Plaintiff states that, upon approaching plaintiff claiming that plaintiff was infringing defendant's patented software, defendant proposed an unfair settlement agreement and threatened suit (cplt., ¶¶ 29-42). Thus, plaintiff brings its declaratory judgment action for noninfringement and patent misuse.

Finally, plaintiff claims that defendant entered into an illegal contract with Patsystems, a business partner of plaintiff's who provides essential services to plaintiff, requiring Patsystems to "terminate any customers that TT claims is using software that infringes TT patents" (cplt., ¶¶ 68-69). Plaintiff alleges, relying on "information and belief," that defendant intends to direct Patsystems to terminate customers, including plaintiff, regardless of whether that party uses infringing software. Plaintiff further alleges that "[o]n information and belief, TT intends to and will attempt to coerce customers of Patsystems such as RCG into accepting unfavorable settlement terms out of the fear of being terminated by Patsystems"(cplt., ¶ 71). Therefore, plaintiff asserts that defendant's contract with Patsystems is illegal and in restraint of trade, in violation of the Sherman Act, §1.

## DISCUSSION

As noted above, under Rule12(b)(6) we must accept the complaint's well-pleaded factual allegations as true, including the inferences reasonably drawn from them. Because FED. R. CIV. P. 8(a)(2) requires only that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," the complaint should be dismissed only if the plaintiff "failed to allege any set of facts upon which relief may be granted." Gibson, 910 F.2d at 1521. *See also* Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Plaintiff expends a significant amount of energy and time arguing that federal notice pleading requires only that plaintiff set forth facts to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests" (plf's response at 3) (*citing* Conley, 355 U.S. at 47). Throughout its response to defendant's motion to dismiss, plaintiff reasserts the notice pleading standard and suggests that its complaint sufficiently put defendant on notice of its claims (plf's response at 5, 13, 16). We recognize that the notice pleading requirements set forth in the Federal Rules of Civil Procedure are quite liberal, and we do not

require specific fact pleading in the federal district court. Neither complex antitrust nor patent claims are an exception to this rule. <u>Hammes v. AAMCO Transmissions, Inc.</u>, 33 F.3d 774, 782 (7th Cir.1994). *See also* <u>Leatherman v. Tarrant County</u>, 507 U.S. 163 (1993) (holding that the Federal Rules of Civil Procedure do not require heightened pleading requirements for § 1983 claims, or any other claims, with the exception of those set forth in FED. R. CIV. P. 9(b)).[1] Plaintiff's claim cannot proceed, however, unless it contains allegations upon which a legal theory can succeed. <u>Car Carriers, Inc. v. Ford Motor Co.</u>, 745 F.2d 1101, 1106 (7th Cir.1984) ("In practice, 'a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under *some* viable legal theory'") (*citing* <u>Sutliff, Inc. v. Donovan Cos.</u>, 727 F.2d 648, 654 (7th Cir.1984)). The <u>Car Carriers</u> court went on to note, "[t]he pleader may not evade these requirements by merely alleging a bare legal conclusion; if the facts 'do not at least outline or adumbrate' a violation of the Sherman Act, the plaintiffs 'will get nowhere merely by dressing them up in the language of antitrust.'" *Id.*

<u>Antitrust Claims</u>

In Count III, plaintiff alleges that defendant has violated the Sherman Act, § 2, which makes it a penalty to monopolize, or attempt to monopolize, any part of interstate trade or commerce. Relying chiefly on defendant's open letter, but also on defendant's aggressive patent infringement litigation and actions around settlement and licensing, plaintiff alleges that defendant's various actions and proposals comprise an attempted monopolization in violation of the Sherman Act. First, plaintiff alleges, "TT has attempted and is attempting to restrain competition in the relevant market by requiring the major futures exchanges to pay

---

[1] Plaintiff's federal claims do not fall within the ambit of the heightened pleading requirements contained in Rule 9(b). Plaintiff's state law fraud claims, however, do fall within Rule 9(b), and must be pled with particularity.

2.5 cents per trade on all trades, regardless of whether the trades are or could be covered by a TT patent" (cplt., ¶ 62). Plaintiff also states, "TT has attempted and is attempting to restrain competition in the relevant market by requiring that RCG pay, as a condition of settlement, fees on products that are not covered by a TT patent" (cplt., ¶ 63). In response, defendant contends that Count III must be dismissed because, as plaintiff has not suffered nor is significantly threatened by an antitrust injury, plaintiff lacks standing to bring an antitrust action. Alternatively, defendant argues that plaintiff's claims must fail because it has failed to allege the basic elements of a Sherman Act, § 2 claim.

In Count IV, plaintiff contends that defendant has also violated the Sherman Act, § 1, which prohibits a contract, combination, or conspiracy in restraint of trade. Specifically, plaintiff alleges that defendant entered into an agreement with Patsystems, an essential partner of plaintiff's, requiring Patsystems to terminate any customers defendant claims is using software infringing upon defendant's patents. Plaintiff suggests that defendant will direct Patsystems to terminate its contract with plaintiff, regardless of whether plaintiff is actually infringing upon defendant's patents, and will use such an agreement to pressure plaintiff into accepting unfavorable settlement terms or supporting the 2.5 cent proposal. As in its response to allegations of § 2 violations, defendant contends that Count IV must be dismissed because plaintiff has failed to plead any antitrust injury or threat of future injury. Specifically, defendant argues, "RCG's mere assertion of its 'belief' that TT 'intends' to get a third party to terminate RCG at some unspecified point is far too attenuated for standing" (def's mem., pp.12-13). As in its response to Count III, defendant argues, alternatively, that plaintiff has failed to adequately plead the essential elements of a Sherman Act, § 1 claim.

In order to bring a civil suit for violation of antitrust laws, plaintiff must first satisfy the standing requirements of the Clayton Act. Indiana Grocery, Inc. v. Super Valu Stores,

Inc., 864 F.2d 1409, 1419 (7th Cir.1989) (stating that "the mere presence of a substantive Sherman Act ... violation ... does not by itself bestow on any plaintiff a private right of action for damages. That is the gift of section 4 of the Clayton Act, which 'defines the class of persons who may maintain private damage actions under the antitrust laws'"). Section 4 of the Clayton Act, 15 U.S.C.A. § 15, provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor ... and shall recover threefold the damages by him sustained." Alternatively, section 16 of the Clayton Act, 15 U.S.C.A. § 26, provides injunctive relief "against threatened loss or damage by a violation of the antitrust laws ...." Therefore, in order to recover damages for an antitrust violation, in addition to showing that plaintiff violated an antitrust law, plaintiff must plead and prove (1) that he is a person within the meaning of the Clayton Act; (2) that he suffered an injury to his business or property by those conditions within the market affected by defendant's conduct; and (3) that the injury is of the type the antitrust laws were meant to recompense. Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977); Warner Mgmt. Consultants, Inc. v. Data Gen. Corp., 545 F.Supp. 956, 962-963 (N.D.Ill.1982). For injunctive relief, instead of pleading and proving an injury to business or property, plaintiff must only plead and prove a significant threat of injury. Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104, 122 (1986); Lake Hill Motors, Inc. v. Jim Bennett Yacht Sales, Inc., 246 F.3d 752, 755 (5th Cir. 2001). The injury, however, must also be of the kind the antitrust laws were designed to guard against. Cargill, Inc., 479 U.S. at 122. Defendant argues that because plaintiff does not satisfy the injury or threat of injury requirement necessary for achieving standing under the Clayton Act, plaintiff's Sherman Act claims cannot proceed.

## Attempt to Monopolize

With regard to its Sherman Act, § 2 claim, plaintiff alleges that it has suffered and will

continue to suffer damages if defendant's attempted monopolization is not curbed, specifically pointing to the proposed 2.5 cent royalty on futures trading and unfair proposed settlement conditions (cplt., ¶¶ 60-66). Defendant argues that plaintiff has sufficiently pled neither (1) an actual or significant threat of injury, nor (2) the requisite kind of antitrust injury, and therefore, its Sherman Act, § 2 claim must be dismissed.

We begin by inquiring as to whether plaintiff has alleged an injury in its business or property. Warner Mgmt. Consultants, Inc., 545 F.Supp. at 961, n4. First, we ask whether plaintiff has pled an actual injury sufficient to satisfy the requirement of Clayton Act, § 4. Plaintiff's alleged injuries stem from two proposals that have not been effectuated – the 2.5 cent proposal and the proposed settlement. Therefore, we agree with defendant that plaintiff has not pled an actual injury and thus cannot maintain a claim for damages for violation of the Sherman Act, § 2.

Next, we ask whether plaintiff has alleged a significant threat of injury to maintain an action for injunctive relief under the Clayton Act, § 16. Regarding the attempt-to-monopolize claim, the threat of injury will come to fruition if (1) the futures trading exchanges accept defendant's 2.5 cent proposal, or (2) plaintiff is coerced into accepting the terms of an unfair settlement. Plaintiff argues that "[i]t is precisely because competitors should not be forced to wait until they are forced out of the market illegally that Congress enacted § 16 of the Clayton Act" for injunctive relief (plf's response at 11). The language of the statute, however, nevertheless requires "threatened loss or damage," and has been interpreted to require plaintiff to "demonstrate a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur." Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 130 (1969). See also Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc., 585 F.2d 821, 844 (7th Cir.1978); South Austin Coalition Cmty. Council v.

SBC Communications Inc., 2001 WL 1250101, *13 (N.D.Ill.2001). Defendant argues, and we agree, that plaintiff's threatened injuries are speculative and remote, and thus do not sufficiently allege a significant threat from an impending violation.

Regarding the 2.5 cent proposal, the major futures exchanges have rejected defendant's proposal (cplt., ¶ 12) and plaintiff does not allege that they are considering changing their minds in the future. Plaintiff contends that this court "sum[med] up the essence of RCG's injury," in its statement, "if a trader has to pay an override regardless, he has every incentive to use plaintiff's software rather than pay plaintiff and also someone else to use that person's software." Trading Tech. v. eSpeed, 2005 WL 2139404 (N.D.Ill.2005). Plaintiff takes such dicta out of context. That order denied a motion to reassign defendant's many cases to this court and simply made a passing comment on REFCO's (a defendant in one of defendant's many patent infringement suits) counterclaims involving the 2.5 cent proposal. The court did not make a determination on whether REFCO, or the current plaintiff, suffered the significant threat of injury necessary to proceed with an antitrust claim. Although plaintiff is correct that "competitors may be able to prove antitrust injury before they actually are driven out of the market and competition is thereby lessened" (plf's response at 11) (citing Blue Shield of Va. v. McCready, 465 U.S. 477, 482 (1982)), that statement does not suggest that courts should entertain antitrust actions where injury has neither occurred nor has a probable likelihood of occurring in the future. Acceptance or probable acceptance of the 2.5 cent proposal must occur before plaintiff has standing to pursue an antitrust violation based on the proposal. Therefore, defendant's 2.5 cent proposal cannot be the basis either for damages under the Clayton Act, § 4, or for injunctive relief under the Clayton Act, § 16.

Similarly, the proposed settlement agreement cannot be the basis of plaintiff's antitrust allegation, as the plaintiff has not alleged that it has accepted the terms of the settlement,

intends to accept the terms of the settlement, or currently is in a position that leaves it no choice but to accept the settlement or suffer serious financial harm. Plaintiff does claim that "[o]n information and belief, based on TT's public statements and course of conduct with REFCO, TT intends to terminate and will terminate RCG's Software License Agreement if RCG does not capitulate to TT's settlement terms" (cplt., ¶ 40). While defendant does not suggest that it intends to terminate its licenses with plaintiff, it does argue that harm to plaintiff from termination would not be an antitrust injury. Defendant is correct that, generally, licenses and contracts are not subject to antitrust liability because we recognize a private party's ability to determine with whom it will deal. As a matter of law, "'[i]n the absence of any purpose to create or maintain a monopoly, the [Sherman] act does not restrict the long recognized right of a trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal.'" Intergraph Corp. v. Intel Corp., 195 F.3d 1346, 1358 (Fed.Cir.1999). Plaintiff has, however, pled that defendant's purpose is to create a monopoly. Although plaintiff's claim does not fail due to a right to license, it does fail because plaintiff does not sufficiently plead that such a harm is imminent or likely in the foreseeable future, as plaintiff has not pled that defendant threatened, or even proposed, such an action. Lake Hill Motors, 246 F.3d 752 (affirming dismissal of plaintiff's antitrust claims where a threat of injury made two years prior was never acted upon because such remote and speculative injury "can not be said to be a genuine threat sufficient to justify injunctive relief under § 16"). Plaintiff has not sufficiently alleged either an actual injury or a significant threat of an impending violation, and therefore cannot sustain a Sherman Act, § 2 claim.

## Illegal Contract, Combination or Conspiracy in Restraint of Trade

With regard to its Sherman Act, § 1 claim, plaintiff alleges that as a condition of its

contract with Patsystems, defendant will direct Patsystems to terminate its relationship with "customers such as RCG" and "will attempt to coerce customers of Patsystems such as RCG into accepting unfavorable settlement terms out of the fear of being terminated by Patsystems." (*Id.* at 68-72). Such an allegation fails for the same reason plaintiff's Sherman Act, § 2 claim failed – plaintiff's complaint lacks an allegation of actual injury necessary for standing under the Clayton Act, § 4, or a significant threat of injury necessary for standing under the Clayton Act, § 16.

The injury alleged is a prospective injury that will come to fruition only if Patsystems terminates its relationship with plaintiff. There is no actual injury and therefore there is no successful claim for damages. Additionally, while plaintiff's allegations, liberally construed, state a potential injury, we do not read the allegations to state an impending violation. Plaintiff makes no allegation that Patsystems has terminated its contract with plaintiff, that Patsystems threatened to terminate the contract, or even that Patsystems intends to terminate the contract. It is unclear whether or when defendant's agreement with Patsystems will actually affect or injure plaintiff. Therefore, we hold that plaintiff's claim for injunctive relief cannot continue where the threat of injury is merely speculative. *See* United States v. W.T. Grant, 345 U.S. 629 (1953) (injunction can issue without a showing of past wrongs, but the moving party must satisfy the court that relief is needed by showing that some cognizable danger of a violation exists). *See also* Mahaffey v. Detroit Newspaper Agency, 1998 WL 739902, *3 (6th Cir.1998) (Clayton Act, § 16 claim cannot proceed because a threat of antitrust injury "is not satisfied by suggesting that the defendants might injure the plaintiffs at some indefinite time in the future ..."). Unless and until defendant requires Patsystems to terminate its relationship with plaintiff, or Patsystems makes a move to do so, we do not think there is a significant threat of antitrust injury as required under Zenith Radio. Thus, we find that

plaintiff does not have standing under either Clayton Act, § 4 or § 16, to proceed with its Sherman Act, § 1 claim.

Because we find that plaintiff lacks standing to progress with its Sherman Act claims at this stage, we will not address the merits of the claims under the Sherman Act.

## Patent Misuse

In Count II, plaintiff seeks a declaratory judgment of patent misuse on the part of defendant. Specifically, plaintiff asserts that defendant has impermissibly broadened the physical scope of its patent grant with anticompetitive effect by (1) demanding that plaintiff make fee payments on products defendant knows are not covered by patents, and (2) demanding that futures exchanges pay royalties to defendant on trades not covered by defendant's patents, after the patents' expirations, and on activities and conduct not covered by defendant's patents. The first allegation of misuse stems from defendant's licensing and settlement proposals to plaintiff. The second allegation of misuse stems from defendant's 2.5 cent proposal to the futures exchanges that would require royalty fees on all trades into perpetuity.

At the outset, we note that patent misuse is generally an affirmative defense which "requires that the alleged infringer show that the patentee has impermissibly broadened the 'physical or temporal scope' of the patent grant with anticompetitive effect." Windsurfing Int'l, Inc. v. AMF, Inc., 782 F.2d 995, 1001 (Fed.Cir.1986). The doctrine of patent misuse originates from the equitable doctrine of unclean hands (B.Braun Medical, Inc. v. Abbott Lab., 124 F.3d 1419, 1427 (Fed.Cir.1997)), and "arose to restrain practices that [do] not in themselves violate any law, but that [draw] anticompetitive strength from the patent right, and thus [are] deemed to be contrary to public policy." Mallinckrodt, Inc. v. Medipart, Inc., 976 F.2d 700, 704 (Fed.Cir.1992).

Defendant asserts that "the patent misuse counterclaim should be dismissed to the extent it is seeking an affirmative claim for relief" (def's mem. at 19). Defendant is correct to the extent that the patent-misuse doctrine cannot be asserted for monetary relief. *See* B. Braun, 124 F.3d at 1427 (holding that a successful patent misuse argument will result in "rendering the patent unenforceable until the misuse is purged ... [but will not] result in an award of damages to the accused infringer"). Although other courts have read B. Braun to require dismissal of a patent misuse counterclaim (*see* PSN Illinois, Inc. v. Ivoclar Vivadent, Inc., 2005 WL 2347209, *3 (N.D.Ill.2005); Bernhardt L.L.C. v. Collezione Europa USA, Inc., 2002 WL 1602447, *2 (M.D.N.C.2002)), we read B. Braun to allow a patent misuse declaratory judgment claim, but allow it solely to enjoin defendant from asserting a patent infringement claim against plaintiff. *See* Inamed Corp., 275 F.Supp.2d at 1124 (allowing plaintiff to raise patent misuse defense by way of an action for declaratory relief). We also note, however, that any injunction issued must limit its effect to rendering the patent unenforceable only until the misuse is purged. *See* B. Braun, 124 F.3d at 1427.

As in this case, patent misuse allegations often arise alongside allegations of antitrust violations. Although a finding of an antitrust violation requires a finding of patent misuse, the same is not true in the reverse. Patent misuse is considered a broader wrong than antitrust violation and a patent misuse claim is easier to prove than an antitrust violation. *See* Inamed Corp. v. Kuzmak, 275 F.Supp.2d 1100, 1125 (C.D.Cal.2002); Motorola, Inc. v. Kimball Intern., Inc., 601 F.Supp. 62, 65 (N.D.Ill.1984); 6 Donald S. Chisum, CHISUM ON PATENTS, § 19.04 (2001). This is because the party asserting patent misuse need not prove anticompetitive effects or individual harm. Transitron Elec. Corp. v. Hughes Aircraft Co., 487 F.Supp. 885, 892 (DMUS.1980).

In order to show patent misuse, plaintiff must plead and prove that defendant

impermissibly broadened the "physical or temporal scope" of the patent grant with anticompetitive effect. If defendant's restrictions do not exceed the scope of its patents, then there can be no patent misuse. *See* B. Braun, 124 F.3d at 1426. If, however, defendant's restrictions do exceed the scope of the patent, a court can find patent misuse either where (1) the Supreme Court has deemed the action per se anticompetitive; or (2) a factual determination reveals that the "overall effect of the license tends to restrain competition unlawfully in an appropriately defined relevant market." Windsurfing Int'l, 782 F.2d at 1001-02.

Unlike the earlier antitrust analysis, plaintiff need not plead specific injury due to defendant's misuse of its patents. The Supreme Court explained: "It is a principle of general application that courts ... may appropriately withhold their aid where the [patentee] is using the right asserted contrary to the public interest .... 'It is the adverse effect upon the public interest of a successful infringement suit in conjunction with the patentee's course of conduct which disqualifies him to maintain the suit, regardless of whether the particular defendant has suffered from the misuse of the patent.'" Morton Salt Co. v. GS Sappier Co., 315 U.S. 488, 493-94 (1942). Therefore, "[patent misuse may be shown from the totality of a licensor's conduct and business practices." Transitron Elec. Corp., 487 F.Supp. at 892.

In this case, plaintiff has adequately pled patent misuse. In Brailed v. This Company, 379 U.S. 29, 32 (1965), the Supreme Court held that "a patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful per se."[2] *See also* U.S. Philips Corp. v. Int'l Trade Com'n, 424 F.3d 1179, 1184 (Fed.Cir.2005) ("the doctrine of patent misuse bars a patentee from using the 'patent's leverage' to 'extend the monopoly of his patent to

---

[2]The Seventh Circuit, in Scheiber v. Dolby Lab., Inc., 293 F.3d 1014 (7th Cir.2002), questioned the wisdom of the holding in Brulotte that any contract extending royalties beyond the temporal limit of the patent was per se misuse. The court also noted, however, that Brulotte is still good law, and maintains its precedential import.

derive a benefit not attributable to the use of the patent's teachings,' such as requiring a licensee to pay a royalty on products that do not use the teaching of the patent"). This is arguably what defendant proposed to the futures exchanges. And because plaintiff does not have to plead injury from that proposal, the patent misuse claim cannot be dismissed on the same grounds on which we dismiss the antitrust claims. Even if the 2.5 cent proposal is not considered per se anticompetitive, we find that the plaintiff has sufficiently alleged actions by defendant that could be deemed anticompetitive under the rule of reason balancing test employed where the conduct is not per se anticompetitive.

Additionally, plaintiff alleges that defendant has committed patent misuse by proposing a settlement agreement that would force plaintiff to make fee payments on products not covered by defendant's patent. Defendant argues that patent misuse cannot stand where patentee simply seeks to enforce his patent rights against infringement or contributory infringement (def's mem. at 19). Although defendant is correct that "[a] patentee that has a good faith belief that its patents are being infringed violates no protected right when it so notifies infringer" (Mallinckdrodt, 967 F.2d at 709), plaintiff alleges that defendant was aware that its demands on plaintiff and futures exchanges are for payments on actions not covered by its patents (cplt., ¶¶ 50-51). Because we view all facts and draw reasonable inferences in favor of the plaintiff in a motion for dismissal on the pleadings, we find that plaintiff sufficiently alleged bad faith on the part of defendant.

We note, however, that plaintiff's claim that the proposed settlement agreement is "unfair" is meaningless if the agreement solely protects actually patented technology. Patent misuse will arise only if the proposed settlement agreement requires royalties, fees or protection beyond the physical or temporal scope of defendant's patented technology. Because it is unclear from the draft settlement agreement whether defendant is attempting to broaden

the scope of its patent, we will not venture any opinion as to the alleged overreaching at this stage in the litigation. Because we leave it for another day, we deny's defendant's motion to dismiss the patent misuse claim.

## Lanham Act Claim

In Count V, plaintiff alleges that defendant violated the Lanham Act, § 42(a)(1)(B)[3], which states:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, or false or misleading description of fact, or false or misleading representation of fact, which (B) in commercial advertising or promotion, misrepresents the nature characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125. Specifically, plaintiff asserts that defendant's claim that "TT has truly leveled the playing field among market participants through" its "innovative technology" contained in its open letter violates the Lanham Act (cplt., ¶ 80). Plaintiff contends that because defendant controls a large part of the order-flow of the market and information embedded in that order-flow, defendant has "unfairly taken advantage of market information to the disadvantage of public market participants, including RCG" (cplt., ¶ 76). Plaintiff states that due to the control of order-flow, market information, and current and future patented technology, defendant will be able to create a "super exchange," thereby eliminating the need for other electronic exchanges, which is ultimately not in the best interest of the public (cplt., ¶¶ 78-80). Thus, plaintiff asks this court to enjoin defendant's unfair business practices under the auspices of the Lanham Act.

In order to maintain a successful claim under the Lanham Act, a plaintiff must show

---

[3]In its complaint, plaintiff incorrectly stated an alleged violation of § 43(a)(1)(A). Defendant recognized the mistake and responded to allegations as if they arose under § 43(a)(1)(B). Therefore, we will treat the complaint as alleging violation of § 43(a)(1)(B).

that defendant (1) made a false factual statement in a commercial advertisement about its own or another's product; (2) the statement actually deceived or is likely to deceive a substantial segment of its audience; (3) the deception is material to a purchasing decision; (4) the statement is about goods entering interstate commerce; and (5) the plaintiff has been injured or injury is probable as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of good will associated with its products. Hot Wax, Inc. v. Turtle Wax, Inc., 191 F.3d 813, 819 (7th Cir.1999) (*citing* B. Sanfield, Inc. v. Finlay Fine Jewelry Corp., 168 F.3d 967, 971 (7th Cir.1999)). As plaintiff only makes a claim for injunctive relief, we do not require plaintiff to allege the additional actual injury and causation elements necessary to make out a claim for monetary damages. *Id.*, at 819-20. Defendant asserts that plaintiff's claim for relief under the Lanham Act should be dismissed because (1) it does not adequately plead a false statement of fact, (2) plaintiff has not been and is not likely to be injured by defendant's statement, and (3) defendant's press release is not a commercial advertisement or promotion.

The false statement element of a Lanham Act claim includes either (1) commercial claims that are literally false, or (2) literally true or ambiguous claims that convey a false impression or are misleading and likely to deceive consumers. *Id.*, at 820. Plaintiff argues that "[a]t this stage in the litigation, RCG need only show that under some set of circumstances, TT's comments can be seen as false" (plf's response at 14). Although this is true, plaintiff also needs to show that under some set of circumstances, defendant's comments can be construed as factual. We do not believe that plaintiff has made any such allegation.

It is somewhat unclear what plaintiff suggests is the false statement of fact upon which its Lanham Act claim is based. Plaintiff points to a statement in defendant's press release that reads: "By making a premier order-entry system commercially available, TT has truly leveled

the playing field among market participation through our innovative technologies." We read plaintiff's complaint to essentially argue that defendant made a false claim of its intention or rationale for making its technology available to the public through the 2.5 cent proposal. Plaintiff seemingly contends that defendant's press release was a deceptive tactic by which it attempted to trick the futures trading exchanges into accepting its proposal or purchasing its software by stating that its intent was to level the playing field and its software was innovative, when, in fact, its intent was to unfairly compete with its competitors (plf's response at 14-15). Defendant apparently understands plaintiff's allegations differently, that plaintiff claims that defendant made false statements of fact in stating both that its technology is "innovative" and that the technology will "level[] the playing field." As we are unsure which contention plaintiff relies upon, we will address each in turn.

If we correctly read plaintiff's claim to be that defendant's false claim of intent and purpose as to its reasoning behind the 2.5 cent proposal violates the Lanham Act, we must disagree. Such a claim cannot be maintained in this action because the allegedly false statement is a subjective statement not actionable under the Lanham Act. See Lutheran Ass'n of Missionaries and Pilots, Inc. v. Lutheran Ass'n of Missionaries and Pilots, Inc., 2005 WL 629605 (D.Minn.2005) (dismissing Lanham Act claim where statements reflected opinion of circumstances surrounding the parties' disaffiliation and intentions to operate in the future). Defendant's intention in proposing the 2.5 cent solution is neither specific nor measurable. See Coastal Abstract Service, Inc. v. First American Title Ins. Co., 173 F.3d 725 (9th Cir.1999) (dismissing Lanham Act action where defendants' assertion that plaintiff was too small to handle a certain amount of business was vague and subjective, and, therefore, not actionable); Groden v. Random House, Inc., 32 U.S.P.Q.2d 1266, 1271 (S.D.N.Y.1994) ("Subjective claims about products, which cannot be proven either true or false, are not actionable under the

Lanham Act"). Defendant's intention in proposing the 2.5 cent proposal was the defendant's opinion, directed at a sophisticated trade audience, and was part of a larger persuasive argument to accept the proposal. Therefore, it is not actionable under the Lanham Act. *See* Glenn v. Advertising Publications, Inc., 251 F.Supp.889, 904 (S.D.N.Y.1966) (finding no Lanham Act violation where the "whole subject is essentially a matter of argument ... [t]he advertiser to whom the argument was addressed was free to make up his own mind as to its validity").

If defendant correctly reads plaintiff's allegation to be that defendant's statements of "innovative" and "leveling the playing field" are false factual statements, we also disagree. This claim cannot be maintained because the allegedly false statements are mere puffery and, therefore, not actionable under the Lanham Act. Puffery is "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely and is not actionable under § 43(a)" Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1145 (9th Cir.1997) (*citing* 3 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 27.04[4][d] at 27-52 (3d ed.1994)). Actionable false statements are generally differentiated from unactionable puffing by determining whether the claims are specific or absolute characteristics of a product capable of testing – such objective claims are not puffery and may be actionable under the Lanham Act. *Id.* In this case, "innovative" and "leveling the playing field" are not specific, not concrete, not measurable, and therefore puffery. *See* Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d 24 (1st Cir.2000) (the statement, "Whiter is not possible," is non-actionable puffing); August Storck K.G. v. Nabisco, Inc., 59 F.3d 616 (7th Cir.1995) (finding that "comparison" to a mystery rival is only puffery and therefore not actionable); Malaco Leaf, AB v. Promotion In Motion, Inc., 287 F.Supp.2d 355 (S.D.N.Y.2003) (using the words "original" and "famous" on packaging constituted mere

puffery); <u>Bose Corp. v. Linear Design Labs, Inc.</u>, 467 F.3d 304 (2d Cir.1972) (defendant's claim of "countless hours of research" leading to superior quality is puffing); <u>Data Cash Systems, Inc. v. Js&a Group, Inc.</u>, 223 U.S.P.Q. 865, 867 (N.D.Ill.1984) ("Frequently, newness claims are only puffing, especially when they are made in the context of promotional literature"). Additionally, as the press release at issue was directed at a specific sophisticated trade audience, no reasonable consumer would rely on such statement to determine whether to accept defendant's proposal. In fact, since the four major futures exchanges targeted by the press release declined the proposal (cplt., ¶ 12), we can say with certainty that they were not "duped" by the defendant's statements. Therefore, plaintiff's Lanham Act claims cannot proceed.

<u>State Law Claims</u>

Finally, plaintiff alleges various violations of state unfair competition claims. In Count VI, plaintiff alleges violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/1 et seq., Count VII alleges violation of the Illinois Uniform Deceptive Trade Practices Act (UDTPA), 815 ILCS 510/1 et seq., and Count VIII alleges violation of common law unfair competition. Defendant argues that such state law unfair competition claims fail for the same reason the Lanham Act claim fails. Alternatively, defendant claims that Count VI must be dismissed for plaintiff's failure to allege its deception and Count VII must be dismissed because plaintiff has failed to allege that it is "likely to be damaged" by defendant's allegedly deceptive trade practices. Plaintiff responds by reasserting its Lanham Act arguments, and restating that "TT controls order flow, led RCG and others to use its software that allows for embedded market information to be used by TT and used that embedded market information to the detriment of RCG and others similarly situated" (plf's response at 19). Neither party devotes much time or effort to arguments regarding these

claims, and each relies primarily on its arguments regarding the Lanham Act claims.

Defendant suggests that claims under both ICFA[4] and UDTPA should be resolved by analyzing them under the principles of the Lanham Act (def's mem. at 25) (*citing* AT&T Corp. v. Synet, Inc., 45 U.S.P.Q.2d 1656, 1660 (N.D.Ill.1997)). Plaintiff does not dispute such a contention. We agree that in this case the fatal flaw in plaintiff's Lanham Act claim also bars plaintiff's state law unfair competition claims.

The ICFA prohibits "unfair methods of competition and unfair or deceptive acts or practices, including ... the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission or such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Practices Act' ... in the conduct of any trade or commerce ...." 815 ILCS 505/2. Although the ICFA was originally designed to protect consumers, it also protects competitors from fraud and unfair competition. *See* Gold v. Golden G.T., LLC, 2005 WL 2465815, *4 (N.D.Ill.2005). Here, plaintiff is both a consumer and competitor of plaintiff's product.

To state a claim under the ICFA, plaintiff must plead that (1) defendant perpetrated a deceptive act; (2) the defendant intended for consumers to rely on that deception; and (3) deception took place in trade or commerce. *See id.*; Jacobson v. Ford Motor Co., 1999 WL 966432, *4 (N.D.Ill.1999). Plaintiff's ICFA claim fails for the same reasons that its Lanham Act claim failed. Opinions and puffery are not actionable under the ICFA. Thacker v.

---

[4]We also note that, with certain exceptions, Illinois courts have held that Rule 9(b),requiring a claimant to plead the circumstances constituting fraud or mistake with particularity, applies to claims under ICFA. *See* Jacobson v. Ford Motor Co., 1999 WL 966432, *4 (N.D.Ill.1999) (*citing* Gallagher Corp. v. Massachusetts Mut. Life Ins. Co., 940 F.Supp.176, 180 (N.D.Ill.1996)); Swift v. First USA Bank, 1999 WL 350847, *5 (N.D.Ill.1999). In Eromon v. Gran Auto Sales, Inc., 351 F.Supp.2d 825, 827 (N.D.Ill.2004), we also required a claimant to plead claims under the ICFA with particularity. In this case plaintiff has not pled its fraud claims with particularity; it has not pled the circumstances , "the who, what, when, where, and how," in detail, as required under the Seventh Circuit's interpretation of Rule 9(b). *See* DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.1990).

Menard, Inc., 105 F.3d 382, 386 (7th Cir.1997). *See also* Tylka v. Gerber Products Co., 1999 WL 495126 (N.D.Ill.1999) (finding that defendant's statements that its baby food products have "optimum nutrition,"and "[are the] most wholesome nutritious safe foods you can buy anywhere in the world," among other statements, were non-actionable sales pitches).

The UDTPA was "designed to address conduct involving either misleading trade identification or false and deceptive advertising." Menasha Corp. v. News America Marketing In-Store, Inc., 238 F.Supp.2d 1024, 1035 (N.D.Ill.2003). The statute prohibits deceptive trade practices and sets forth twelve specific practices declared illegal under the Act, including "(5) represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation or connection that he or she does not have; (6) represent[ing] that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used or second-hand; (11) mak[ing] false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; (12) engag[ing] in any other conduct which similarly creates a likelihood of confusion or misunderstanding. 815 ILCS 510/2.

In Count VII, plaintiff claims "TT's conduct, as well as that of its officers and/or principals creates a likelihood of misunderstanding and therefore violates the Illinois Uniform Deceptive Trade Practices Act" (cplt., ¶ 87). As plaintiff's brief points to its Lanham Act arguments to support its UDTPA claim, we can only assume that plaintiff intends to reassert its false advertising claim based on the statement that "TT has truly leveled the playing field among market participation through our innovative technologies." Although at first glance it appears that plaintiff might have a viable claim for violation of the UDTPA, the claim fails because the allegedly false statement contained in defendant's press release does not appear to be material to plaintiff's claimed injury. Plaintiff does not allege or present facts that it

would have acted differently had it known that plaintiff was proposing its 2.5 cent proposal in order to slant the playing field to plaintiff's advantage, rather than to level the playing field. *See* <u>Kellerman v. Mar-Rue Realty and Builders, Inc.</u>, 476 N.E.2d 1259, 1264 (Ill.App.Ct.1985) (finding no violation of ICFA or UDTPA, where plaintiff did not allege that it would have done anything differently had it known of a fact omitted from defendant's advertisement). Additionally, plaintiff does not allege that it acted in reliance on such a statement – there is no allegation that plaintiff purchased more of defendant's software or encouraged the trading exchanges to adopt defendant's proposal in reliance on defendant's statement that it was proposing the 2.5 cent proposal in order to level the playing field. Therefore, plaintiff's UTDPA cannot proceed.

## CONCLUSION

For the reasons set forth above, we grant defendant's motion to dismiss with respect to Counts III through VIII: the Sherman Act, §§ 1 and 2 claims, the Lanham Act claim, and the state and common law claims. We deny defendant's motion to dismiss with respect to Count II, the declaratory judgment patent misuse claim.

JAMES B. MORAN
Senior Judge, U. S. District Court

Dec 26 , 2005.