MHW

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Trading Technologies International, Inc.,<br>Plaintiff,<br>vs.<br>eSpeed, Inc., eSpeed International, Ltd.,<br>Ecco LLC, and Ecco Ware Ltd.,<br>Defendants. | ) ) ) ) ) ) ) | No. 04 C 5312<br>Judge Moran |
| Trading Technologies International, Inc.,<br>Plaintiff,<br>vs.<br>Refco Group Ltd., LLC, et al.,<br>Defendants. | ) ) ) ) ) ) | No. 05 C 1079<br>Judge Andersen |
| Rosenthal Collins Group, LLC,<br>Plaintiff-Counterclaim Defendant,<br>vs.<br>Trading Technologies International, Inc.,<br>Defendant-Counterclaimant, | ) ) ) ) ) ) | No. 05 C 4088<br>Judge Moran |
| Trading Technologies International, Inc.,<br>Plaintiff,<br>vs.<br>GL Consultants, Inc. and GL Trade SA,<br>Defendants. | ) ) ) ) ) ) | No. 05 C 4120<br>Judge Gottschall |
| Trading Technologies International, Inc.,<br>Plaintiff,<br>vs.<br>CQGT, LLC and CQG, Inc.,<br>Defendants. | ) ) ) ) ) ) | No. 05 C 4811<br>Judge Moran |
| Trading Technologies International, Inc.,<br>Plaintiff,<br>vs.<br>FuturePath Trading, LLC,<br>Defendant. | ) ) ) ) ) ) | No. 05 C 5164<br>Judge Shadur<br>All Cases Assigned to Judge<br>Moran For Common Issues |

## MEMORANDUM OPINION AND ORDER

Plaintiff Trading Technologies International ("TT") and third party Harold Brumfield move for an immediate protective order preventing disclosure of certain materials which were already subject to a protective order prior to being displayed in open court by defendants eSpeed Inc. and Ecco LLC (collectively "eSpeed"), during the recent inequitable conduct

hearing. eSpeed, along with other defendants, Rosenthal Collins Group ("RCG"), GL Consultants, Inc., GL Trade SA (collectively "GL"), and CQGT, LLC and CQG, Inc. (collectively "CQG"), oppose the motion. For the following reasons we grant, in part, TT and Brumfield's motion.

On April 3 and 4, 2008, this court held a hearing to address eSpeed's motion for judgment as a matter of law that TT's patents are unenforceable due to inequitable conduct. Two weeks prior to the hearing, the parties exchanged exhibit lists. Neither party's exhibit list designated any exhibits as either confidential or highly confidential, though many of the exhibits had been so designated throughout these proceedings. To expedite the hearing process, both parties agreed to limit their objections to testimony and admission of various exhibits. At the end of the hearing, the parties moved to admit their exhibits *en masse*. These exhibits included two segments of video of Brumfield's trading computer screen, as well as a portion of his trading records for that day, which constitutes a financial document. These exhibits were presented during the hearing in open court, on a large display screen angled away from the gallery and toward the court, and were the subject of testimony from eSpeed's expert. Brumfield was not in the courtroom when the evidence was presented, nor was his personal counsel present at the hearing. However, Brumfield's counsel had received a copy of the exhibit designations before the hearing and TT's counsel has often, throughout the course of this case, represented Brumfield's interests. On the next business day following the conclusion of the hearing, TT contacted eSpeed to remind it that these videos and the trading record remained subject to an agreed protective order and were considered "highly confidential – attorney's eyes only." TT and Brumfield then filed this motion, which all defendants oppose.

We agree with TT and Brumfield that the protective order still governs the trading

record and videos. We understand that there is a strong presumption of public access to court proceedings and court records that is rooted both in the common law and the Constitution. <u>Grove Fresh Distribs. v. Everfresh Juice Co.</u>, 24 F.3d 893, 897 (7th Cir. 1994). However, neither right is absolute. *Id.* Here, the only parties seeking disclosure are those who are already parties to the action, not the press or the general public.

The videos in question display Brumfield's custom-designed trading screen, upon which he trades on a daily basis. The video shows the exact configuration of his screen, how he sets up his programs for his trading day, as well as his specific method of trading through the movement of his mouse. We agree with TT and Brumfield that this information, if exposed, could damage Brumfield's commercial advantage in the highly-competitive world of commodities trading, by exposing his trading style – something unique to him – which has proven quite lucrative. We hold that such information is a trade secret, as defined by the terms of the protective order.[1] We further find that Brumfield's trading records are confidential financial documents, as defined by the protective order.[2]

Here, the parties entered into an agreed protective order governing a wealth of discovery materials. Brumfield's videos and trading record were submitted under the terms of this order as highly confidential material, defined by the protective order to include financial information and trade secrets. The designation of these videos and records has never been challenged by

---

[1] Paragraph 4 of the eSpeed protective order maintains that a "trade secret" is governed by the definition found in the Uniform Trade Secrets Act ("UTSA"). The UTSA defines a trade secret as "information, including a formula, pattern, compilation, program device, method, technique, or process, that (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

[2] Paragraph 4 of the protective order lists several types of confidential financial documents that may be designated as "highly confidential" revenue from sales/licenses of products, net and gross revenue, profit and loss statements, earnings statements and accounts receivable/payable statements, including forecasts and plans.

eSpeed or any other defendant until now. These exhibits have been utilized many times before this court, including at the jury trial. At that time certain precautions were taken to ensure that all protected material remained so, through the exclusion of witnesses and the closing of the courtroom. All parties have submitted their briefing under seal, as well. We find it clear that at all times the parties intended these exhibits to remain highly confidential, and TT's failure to object to the presentation of the videos and record at the hearing was inadvertent – perhaps prompted by the informal nature of the hearing – and did not constitute a waiver of the protective order, given the immediate attempt to reconfirm the protection with eSpeed the following business day.

We are unpersuaded by the cases defendants cite. In <u>Binney & Smith, Inc. v. Rose Art Industries, Inc.</u>, the court held that defendants waived their right to confidentiality when they failed to object to the introduction of previously-designated confidential evidence in a preliminary hearing. 1995 U.S. Dist. LEXIS 3151 (N.D. Ill. March 10, 1995). We find that case distinguishable for several reasons. First, the protective order there "contained no provision that materials submitted during the preliminary hearing should be deemed confidential." *Id.* at *1. Here, the parties' protective order clearly covers all stages of the case. Second, in <u>Binney</u>, both parties introduced the supposedly confidential documents without invoking the protective order. Here, while TT did list several of the exhibits at issue in its exhibit list, and moved its exhibits into evidence *en masse*, it did not present the exhibits to the court at the hearing. Finally, the court in <u>Binney</u> noted that "no trade secrets have been revealed in the documents." *Id.* at *8. As we noted above, Brumfield's trading videos fall within the UTSA definition of a trade secret.

Defendants' cite to <u>Littlejohn v. BIC Corp.</u>, is similarly unavailing. 851 F.2d 673 (3rd Cir.

1988). There, not only did the defendants fail to object to the introduction of the confidential information at trial, they did not seek to seal the record until long after the jury had returned a verdict and the parties had settled on damages – too late according to the terms of the protective order. Here, TT contacted eSpeed the following business day to confirm that the videos and report were still protected, and then immediately filed this motion.

Defendants' cite to In re Continental Illinois Sec. Litig., 732 F.2d 1302 (7th Cir. 1984) is inapposite. There, the parties seeking disclosure were a pair of nationally circulating newspapers. Unlike here, the report they were seeking (for public disclosure) had been voluntarily offered into evidence by the party that created it. *Id.* at 1312. In addition, the protective order entered in that case did not cover the entry of the report in evidence on a dispositive motion. *Id.* at 1311 Here, as stated above, the protective order covers all aspects of the case, and while TT did place some of these items in its exhibit list, they were offered at the hearing by eSpeed. *Id.* ("this is not a case in which the *recipient* of protected discovery material introduced it into evidence; in such a case the protective order might have a wholly different significance").

Similarly, in In re Application of National Broadcasting Co., Inc., 635 F.2d 945 (2nd Cir. 1980), the issue was whether members of the press could duplicate video tapes depicting members of Congress engaged in bribery – tapes that were entered into evidence during a criminal trial of those congressional members. *Id.* at 948. Unlike here, those videos had never been the subject of a protective order and were not only shown in court, but verbatim transcripts were provided to both the jury and members of the press. *Id.* Furthermore, sketch artists created renditions of the activities shown on the tapes. *Id.* Even then, the court found that this activity only raised a "presumption," though a very strong one, in favor of disclosure.

*Id.* at 952. Here, Brumfield's videos and trading record are not the type of materials that are so important to the public that a strong presumption is raised in favor of disclosure. Neither members of the public nor the press are seeking their disclosure – only other parties to this case. Any presumption raised is negated by the fact that public disclosure of these exhibits could "harm [Brumfield's] competitive standing." *Id.* at 950.

Finally, while this court relied on the exhibits in rendering its decision on the issue of inequitable conduct, that reliance alone does not negate their confidentiality. They were not instrumental to the court's holding – it would not have mattered whether or not Brumfield actually engaged in trading during the period in question since the court held that TT had no duty to disclose such activity to the Patent and Trademark Office. Nor did the court's memorandum order and opinion go into great detail about these videos and trading records. Therefore, on balance, the foregoing considerations demonstrate good cause for upholding the protective order over the materials in question.

TT also requests that GL and RCG should bear TT's costs for bringing the motion, since they allegedly refused to comply with the protective order, which requires challenging parties to request relief of the court. TT does not elaborate on how GL and RCG violated the protective order, nor does it address this issue in its reply. For lack of more specific information, we deny TT's request for costs.

## CONCLUSION

For the foregoing reasons, TT's motion is granted as to the protective order and denied as to costs.

JAMES B. MORAN

_May 23_, 2008.　　　　　　　　　　　Senior Judge, U. S. District Court