IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROSENTHAL COLLINS GROUP, LLC, | ) | |
| | ) | |
| Plaintiff/Counter-defendant, | ) | |
| | ) | |
| vs. | ) | No. 05 C 4088 |
| | ) | |
| TRADING TECHNOLOGIES INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff, counter-defendant, Rosenthal Collins Group ("RCG"), moves for leave to use Burton Gutterman as an expert witness in response to defendant, counter-claimant, Trading Technologies, Inc.'s ("TT") motion for summary judgment. TT argues that RCG should not be permitted to use Gutterman because he was previously consulted by TT in this same litigation and TT alleges that it shared confidential and work-product information with him. Based on TT's representations of its relationship with Gutterman, we granted an *in camera* of materials allegedly supporting TT's position. After the *in camera* review, we grant RCG's motion for leave to retain Gutterman as an expert witness.

Federal courts have inherent power to disqualify expert witnesses where or when it is necessary to protect the integrity of the adversary process, and/or to promote public confidence in the legal system. Greene, Tweed of Delaware, Inc. v. Dupont Dow Elastomers LLC, 202 F.R.D. 426 (E.D. Pa. 2001). This is especially true where the basis for disqualification is the "expert's past relationship with an adversary in litigation." American Empire Surplus Lines Ins. Co. v. Care Centers, Inc., 484 F. Supp. 2d 855, 857 (N.D. Ill. 2007); Koch Refining Co. v. Continental Ins. Co., 85 F.3d 1178, 1181 (5th Cir. 1996). The majority of courts dealing

with this issue have held that the standard for expert disqualification differs from that of attorney disqualification because "experts are not advocates in the litigation but sources of information and opinions." English Feedlot v. Norden Lab., Inc., 833 F. Supp 1498, 1501 (D. Colo. 1993); *see also* Great Lakes Dredge & Dock Co. v. Harnischfeger Corp., 734 F. Supp. 334 (N.D. Ill. 1990); Stencel v. Fairchild Corp., 174 F. Supp. 2d 1080 (C.D. Cal. 2000); In re Ambassador Group, 879 F. Supp. 237 (E.D.N.Y. 1994); Paul v. Rawlings Sporting Goods Co., 123 F.R.D. 271 (S.D. Ohio 1988); Chamberlain Group, Inc. v. Interlogix, Inc., 2002 U.S. Dist. LEXIS 6998 (N.D. Ill. Apr. 18, 2002); EEOC v. Locals 14 & 15, International Union of Operating Engineers, 1981 U.S. Dist. LEXIS 11194 (S.D.N.Y. 1981); *but see* Marvin Lumber & Cedar Co. v. Norton Co., 113 F.R.D. 588 (D. Minn. 1986); Conforti & Eisele, Inc. v. Div. of Building & Construction, 170 N.J. Sup. 64, 405 A.2d 487 (N.J. 1979). We agree with the reasoning that since experts perform different functions than attorneys, the standard for their disqualification should be different. English Feedlot, 833 F. Supp. at 1501.

Courts apply a two-part test to determine whether an expert should be disqualified. The court first asks whether the party seeking disqualification acted reasonably in assuming that a confidential relationship existed and, second, whether confidential information was exchanged requiring disqualification of the expert. American Empire, 484 F. Supp. 2d at 857. If both questions are answered in the affirmative, disqualification is warranted. However, if either inquiry is answered in the negative, disqualification is not appropriate. Greene, Tweed, 202 F.R.D. at 429. Disqualification of an expert is a "drastic measure which courts should hesitate to impose except when absolutely necessary." Commonwealth Ins Co. v. Stone Container, 178 F. Supp. 2d 938, 943 (N.D. Ill. 2001). Thus, the party seeking disqualification bears the heavy burden of showing both the existence of a confidential relationship and the transmission of confidential information, and cannot satisfy this burden by relying on "merely

conclusory or ipse dixit assertions." Greene, Tweed, 202 F.R.D. at 429.

Despite TT's ability to provide this court with evidence of its relationship with Gutterman *in camera*, it has not met its burden to demonstrate that both parts of the test have been met. It is clear that TT did enter into a confidential relationship with Gutterman, evidenced by the non-disclosure agreement ("NDA") of July 22, 2004. The parties do not appear to dispute this, except to the extent that Gutterman filed a declaration asserting he was never actually retained as a consultant or an expert, despite the NDA. We find the NDA sufficient to show a confidential relationship. Aerospace America, Inc. v. Abatement Technologies, Inc., 738 F. Supp. 1061, 1071 (E.D. Mich. 1990); Twin City Fire Ins. Co., Inc. v. Mitsubishi Motors Credit of Am., Inc., 2006 U.S. Dist. LEXIS 97164 (C.D. Cal. Nov. 6, 2006)(non-disclosure agreement sufficient for reasonable belief of confidential relationship despite fact expert not formerly retained).

Gutterman's declaration states that to his knowledge he had only two meetings with TT under the NDA, and at no time did he receive any confidential information. For its part, TT offers the declaration of Steven Borsand, TT's in-house counsel, who states that TT had "several" meetings with Gutterman four years before, and that during those meetings TT and its counsel discussed litigation strategy, prior art, and a relevant court decision. Borsand states that confidential and work product information was discussed with Gutterman. It was based on these statements that we permitted TT to submit other supporting materials *in camera*. However, the materials submitted do little to support TT's position. They consist of several one- or two-line e-mail exchanges between Borsand, or TT's president Harris Brumfield, and Gutterman. None of the e-mails consists of any confidential or work product information, and TT has offered no other evidence of the content of any discussions or meetings, such as notes taken by TT's counsel. The only portion of TT's submissions that comes close to being work-

product is one exchange between Brumfield and Gutterman regarding an opinion of the court. However, that exchange is brief and Gutterman's response of only two sentences is too vague to be considered "advice."

TT has done nothing to refute Gutterman's statement that only two meetings took place. It only provides evidence of two meetings, one before the signing of the NDA and one after the signing, which is consistent with Gutterman's declaration. While Gutterman did correspond with TT through February 2005, TT has offered no evidence that it ever actually retained him or paid him any fees,[1] and there is no evidence Gutterman ever billed TT or issued a report, either orally or in writing. TT has failed, even *in camera*, to provide this court with evidence of the transmission of confidential information to Gutterman. Borsand's declaration that such information was transmitted is not enough to satisfy TT's burden, especially where Gutterman declares he received none.[2] Therefore, we permit RCG to use Gutterman as its expert.

## CONCLUSION

For the foregoing reasons, RCG's motion is granted.

JAMES B. MORAN
Senior Judge, U. S. District Court

Aug. 15, 2008.

---

[1] TT argues that it did compensate Gutterman, through Brumfield's agreeing to speak to a trading group Gutterman owned. TT supports this statement with an e-mail exchange simply reciting the logistics of the speaking engagement. Nowhere in those e-mails does Brumfield or Gutterman state that the engagement is in exchange for consultation work – this is simply an inference TT asks us to draw. We cannot.

[2] Furthermore, Gutterman has sworn to remain bound by the NDA to the extent that he did receive any such information. Yet, the NDA specifically did not require him to "refrain from entering into an agreement or negotiation with another party." (NDA p. 1). As such, Gutterman has not breached the NDA by agreeing to be RCG's expert.