**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROSENTHAL COLLINS GROUP, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.:  05-cv-4088 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| TRADING TECHNOLOGIES | ) | Magistrate Judge Jeffrey Cole |
| INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Trading Technologies International, Inc. ("TT") brought a number of separate

patent infringement suits relating to computer software used for electronic trading in the futures

industry.  In anticipation of a similar suit, Rosenthal Collins Group, Inc. ("RCG") brought this

declaratory judgment action against TT.  Currently pending before the Court are the parties'

cross-motions for summary judgment [156, 200].  For the reasons stated below, both motions are

denied.

**I.      Background**

TT's nearly identical patents, U.S. Patent Nos. 6,766,304 ('304 patent) and 6,882,132

('132 patent), relate to computer software used for electronic trading in the futures industry.[1]

---

[1] Claim 1 of each of the patents is representative.  Claim 1 of the '132 patent reads:

> A method of placing a trade order for a commodity on an electronic exchange having an
> inside market with a highest bid and a lowest ask price, using a graphical user interface
> and a user input device, said method comprising:
>
> [1] setting a preset parameter for the trade order
>
> [2] displaying market depth of the commodity, through a dynamic display of a plurality
> of bids and a plurality of asks in the market for the commodity, including at least a
> portion of the bid and ask quantities of the commodity, the dynamic display being aligned

Specifically, TT patented a "method and system for reducing the time it takes for a trader to place a trade when electronically trading on an exchange, thus increasing the likelihood that the

with a static display of prices corresponding thereto, wherein the static display of prices does not move in response to a change in the inside market;

[3] displaying an order entry region, aligned with the static display prices comprising a plurality of areas for receiving commands from the user input devices to send trade orders, each area corresponding to a price of the static display of prices; and

[4] selecting a particular area in the order entry region through a single action of the user input device with a pointer of the user input device positioned over the particular area to set a plurality of additional parameters for the trade order and send the trade order to the electronic exchange.

Claim 1 of the '304 patent reads:

A method for displaying market information relating to and facilitating trading of a commodity being traded in an electronic exchange having an inside market with a highest bid price and a lowest ask price on a graphical user interface, the method comprising:

[1] dynamically displaying a first indicator in one of a plurality of locations in a bid display region, each location in the bid display region corresponding to a price level along a common static price axis, the first indicator representing quantity associated with at least one order to buy the commodity at the highest bid price currently available in the market;

[2] dynamically displaying a second indicator in one of a plurality of locations in an ask display region, each location in the ask display region corresponding to a price level along the common static price axis, the second indicator representing quantity associated with at least one order to sell the commodity at the lowest ask price currently available in the market;

[3] displaying the bid and ask display regions in relation to fixed price levels positioned along the common static price axis such that when the inside market changes, the price levels along the common static price axis do not move and at least one of the first and second indicators moves in the bid or ask display regions relative to the common static price axis;

[4] displaying an order entry region comprising a plurality of locations for receiving commands to send trade orders, each location corresponding to a price level along the common static price axis; and

[5] in response to a selection of a particular location of the order entry region be a single action of a user input device, setting a plurality of parameters for a trade order relating to the commodity and sending the trade order to the electronic exchange.

trader will have orders filled at desirable prices and quantities" ('132 Abstract; '304 Abstract).

In electronic trading art used prior to TT's patented invention, the computer trading screen showed the changes in the inside market, but a rapidly fluctuating market often caused traders to miss their prices when entering an order at the exact time the inside market was moving. Prior art also lacked speed, requiring the trader to enter multiple elements of his or her trade before the order could be sent to the market.

TT's technology changed the electronic futures trading industry by allowing traders to quickly place an order without sacrificing accuracy. In order to do this, the software pairs a "static display of prices" ('132 patent) or "common static price axis" ('304 patent) with "dynamic displays" of "bid" and "ask" columns. The combination allows the trader to track the changing market prices without the prices shifting from under him or her. The user then places a bid or ask order in the "order entry region" through a "single action of a user input device," which allows for a quicker transmission of the trade to market.

Beginning in 2004, TT brought a number of suits against various defendants alleging infringement of the '132 patent and '304 patent. Those cases that did not settle were consolidated before Judge James Moran for purposes of discovery and claim construction. Judge Moran held a three-day *Markman* hearing and afterward entered a claim construction order. As relevant to these motions, Judge Moran interpreted "common static price axis" as "a line comprising price levels that do not change positions unless a manual re-centering command is received and where the line of prices corresponds to at least one bid value and one ask value." *Trading Tech., Int'l, Inc. v. eSpeed, Inc.*, 2006 WL 3147697 at *4 (N.D. Ill. Oct 31, 2006). He also interpreted "static display of prices" as "a display of prices comprising price levels that do

not change positions unless a manual re-centering command is received." *Id.* Essentially, if a price axis moves without input from the user, the product does not infringe.

TT asked Judge Moran to clarify or reconsider his construction of the term "static." As relevant here, TT argued that the term static did not indicate permanent non-movement. Instead TT contended that infringement for any length of time, regardless of whether the accused product or process also had times of non-infringement, covered its claims. Judge Moran declined to reconsider his construction. He recognized the doctrine of part-time infringement, but held that: "Where, however, the claim limitation itself—here a static condition—requires permanency, any movement (outside of manual re-centering or re-positioning) negates one of the specified claim limitations. Therefore, introduction of such movement takes an accused device out of the protection of plaintiff's patents." *Trading Tech., Inc. v. eSpeed, Inc.*, 2007 WL 611258 at *5 (N.D. Ill. Feb. 21, 2007).

A trial subsequently was held in the case against defendants eSpeed, Inc. and Ecco, LLC ("collectively "eSpeed"), and a jury found that three of eSpeed's products infringed TT's patents. TT and eSpeed have filed cross-appeals of various orders issued by Judge Moran. One of the issues that TT raises on appeal is that Judge Moran's constructions of the claim terms "common static price axis" and "static display of prices" are too narrow. Because the claim construction order affects the remaining cases, most of them have been stayed pending the outcome of the eSpeed appeal. However, Judge Moran allowed this case to proceed because TT represented that RCG's Onyx software literally infringes on the patents-in-suit even under his narrow claim construction. This case was subsequently transferred to this Court. The pending cross-motions for summary judgment are fully briefed and ready for resolution.

**II.    Analysis**

Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Summary judgment is not appropriate "[i]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).  The Court may not make credibility determinations, weigh evidence, or decide which inferences to draw from the facts.  *Id.* at 255.  Where, as here, the parties file cross motions for summary judgment, each party must still demonstrate that there are no genuine issues of material fact.  See *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voight*, 700 F.2d 341, 349 (7th Cir. 1983).  The Court is not obligated to grant summary judgment for one side.  *Id.*  The Court must evaluate each party's motion on its own merits, resolving all factual uncertainties and drawing all reasonable inferences against the party whose motion is under consideration.  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

There is no genuine issue of material fact regarding how the Onyx software operates.  When a user launches the "Ask Bid Volume" window ("ABV") or ABV 2 window and chooses a contract to display, a dynamic price axis appears in the window.  On either side of the dynamic price axis are bid and ask columns, representing the current market depth, along with the buy and sell columns that display the users current orders.  Also displayed is a quantity column showing the total quantity currently trading at a particular price.  The dynamic price axis continually adjusts the displayed prices so that the last traded price is in the center of the column.

If a user positions the cursor within the ABV window, the prices displayed in the price axis remain stationary for the duration of the cursor's presence in the window.  However, if the

cursor remains inactive for 30 seconds[2] while inside the window, then the axis will begin to slowly scroll up or down the screen to bring the last traded price back to center. While the price axis remains stationary, the user may manually adjust the prices on the price axis away from the last traded price by scrolling along the price axis. If the user removes the cursor from the ABV window, the price axis immediately re-centers on the last traded price.

Although the parties agree on the mechanics of how the Onyx software operates, they disagree on how to characterize that operation. TT argues that Onyx operates in three separate modes: display mode, order entry mode, and drift mode. TT describes display mode as when the cursor is outside the ABV window and the price axis automatically re-centers around the last traded price [202 at 6-7]. According to TT, when the cursor enters the ABV window and the price axis remains stationary the software enters into order entry mode (i*d.* at 7). Finally TT explains that drift mode engages if the cursor remains stationary in the ABV window long enough for the price axis to begin to scroll toward the last traded price (*id.* at 8). TT recognizes that while Onyx is in display and drift modes the price axis is dynamic and therefore does not infringe the patents-in-suit while in those modes (*id.* at 7-8). But TT contends that while the price axis is static in order entry mode, Onyx does infringe, and because the software is capable of operating in an infringing mode, Onyx on the whole infringes (*id.* at 9-11).

RCG argues that TT impermissibly attempts to add a "mode" requirement to Judge Moran's claim construction and, further, that TT attempts to relitigate the part-time infringement argument it previously lost before Judge Moran [259 at 2-4]. If either of those assertions is true, then TT's arguments are indeed improper. Under the principles of law of the case, this Court

---

[2] The parties dispute whether the relevant time period is 30 seconds or 90 seconds of mouse inactivity. Because the actual amount of time is irrelevant to the disposition of the motions, the Court declines to address this discrepancy.

must give deference to Judge Moran's earlier rulings—including his claim construction. *See Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007) (clarifying that the presumption that earlier rulings in a case should not be revisited absent a compelling reason "holds when a case is reassigned from one judge to another); *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686, 691 (7th Cir. 2005) (explaining that successor judge is not free to alter prior rulings "merely because he has a different view of the law or the facts from the first judge"). But the Court does not understand TT to be making either of these arguments.

Judge Moran ruled that the claim limitation here precluded a finding of part-time infringement, because a static condition by definition requires permanency. *Trading Tech*, 2007 WL 611258 at *5. In other words, a price axis that remains stationary only at certain times and moves at other times cannot infringe. TT's current argument is different. TT argues that if software can operate entirely in different modes – one that infringes and one that does not – then the software infringes [see 202 at 9-10] (citing, among others, *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1309-10 (Fed. Cir. 2005)). An example of such software is eSpeed's Futures View software. Although Futures View was designed with a dynamic price axis, the user may opt to have the price axis remain stationary by changing a menu setting. Thus, it is possible for a person to use Futures View entirely in a mode that is protected by the patents. The jury in the eSpeed trial recognized this when it found that Futures View literally infringed the '132 and '304 patents. Accordingly, the Court finds that TT's current argument does not alter Judge Moran's claim construction or relitigate TT's part-time infringement argument.

RCG next contends that TT mistakenly characterizes the operation of the Onyx software system as comprising three separate "modes" in order to force Onyx under the protection of the

7

patents-in-suit (R. 259 at 11). Rather than three modes of operation, RCG characterizes Onyx as having one mode of operation and explains that there is always the possibility the price axis will move without input from the user (*id.*). If TT is correct, then Onyx is like eSpeed's Futures View, and a jury might find that it infringes. But if RCG is correct, there can be no infringement. The Court is unable to resolve this dispute on the basis of the record presented. Because the Court is not permitted to draw inferences from the facts presented, this case is not a candidate for summary judgment. Ultimately it will be the job of the fact-finder to draw inferences from the facts presented in order to determine if Onyx infringes all of the claims at issue. *Warner-Lambert Co. v. Teva Pharmaceuticals USA, Inc.*, 418 F.3d 1326, 1340 (Fed. Cir. 2005). The cross-motions for summary judgment are denied.

The appeal in the eSpeed case is still pending before the United States Court of Appeals for the Federal Circuit. Because that court's ruling on claim construction, among other matters, may affect the direction of this case, it makes little sense to proceed further on the merits of the underlying patent infringement dispute until that appeal is resolved. Accordingly, the proceedings on the merits are stayed until the Federal Circuit issues its ruling in the eSpeed appeal. However, the stay does not apply to the Court's consideration of TT's motion for default judgment and monetary sanctions based on alleged misconduct [308], as to which the Court recently entered an agreed briefing schedule [310].

**III.** **Conclusion**

For the foregoing reasons, the parties' cross motions for summary judgment [156, 200] are denied and further proceedings on the merits of the patent infringement dispute in this case are stayed pending the Federal Circuit's ruling in the appeal of case number 04 C 5312.

Dated:  September 18, 2009                    _____

Robert M. Dow, Jr.
United States District Judge