**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROSENTHAL COLLINS GROUP, LLC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **Case No. 05 CV 4088** |
| | ) | |
| TRADING TECHNOLOGIES INTERNATIONAL, INC., | ) ) ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| Defendant. | ) | **June 29, 2010** |

**MEMORANDUM OPINION and ORDER**

Before the court is the issue of whether defendant, Trading Technologies International, Inc. ("TT"), is entitled to $375,106.75 in attorney fees and costs [244, 294]. In this patent litigation, the court sanctioned the plaintiff, Rosenthal Collins Group, LLC ("RCG"), for attempting to mislead the court and the defendant when it represented that it had discovered prior art that invalidated the patents-in-suit. RCG now argues that TT spent too much money exposing its misconduct and that TT is entitled to no more than $3,750. For the following reasons, TT is entitled to recover $289,234.39 in fees and costs:

**Procedural History**

On July 15, 2005, RCG filed this lawsuit against TT seeking a declaratory judgment that: (1) TT's patents for computer software used in electronic futures trading ("the '132 patent" and "the '304 patent") are invalid; and (2) RCG had not infringed either of TT's patents. TT filed counterclaims and alleged that RCG had infringed the patents-in-suit. TT brought similar patent infringement claims against other entities in five other lawsuits filed

in the Northern District of Illinois. The court consolidated all of these cases for purposes of discovery and claim construction; the lead case in the series is *Trading Tech., Int'l, Inc. v. eSpeed, Inc.*, No. 04-CV-5312 ("the *eSpeed* litigation"). RCG and the defendants in these other actions engaged in discovery focused on finding evidence of prior art to show that TT's patents are invalid.

On January 23, 2006, TT filed a claim construction brief asserting that RCG's products infringe on multiple claims of the '132 and '304 patents. (R. 42.) Three months later, on April 26, 2006, RCG moved for summary judgment asserting that the '132 and '304 patents are invalid because the Wit Capital digital stock market ("Wit DSM") is prior art that disclosed each element of the claims of TT's patents. (R. 62.) RCG's motion hinged largely on the declaration of Walter Buist ("Buist"), the creator of Wit DSM. TT poured over the technical materials provided by RCG and deposed Buist and his son Christopher Buist (together "the Buists") to investigate the validity of RCG's prior art assertion. The deposition of the Buists then triggered what has become a three-year fee battle.

On August 10, 2006, TT moved for sanctions on the basis that RCG fabricated the Wit DSM prior art in order to invalidate TT's patents. (R. 90.) TT accused RCG and its counsel of directing Buist to materially alter the evidence by changing certain codes in its software programming to make it appear that before TT obtained its '132 and '304 patents the Wit DSM included the single-action-order entry capability TT's patents describe. In order to uncover this alleged fraud, TT asserted that its expert had to analyze millions of lines of code

2

looking for 12 lines of altered code. TT sought, *inter alia*, default judgment and an award of attorney fees and costs against RCG as relief.

On March 14, 2007, the court denied TT's motion for sanctions to the extent that TT sought default judgment. (R. 142.) The court held that default judgment was not warranted because TT failed to show, by clear and convincing evidence, that "Buist or RCG's counsel willfully and intentionally fabricated evidence to deceive this court or the judicial system." (Id. at 10-11.) But the court agreed with TT that RCG's motion for summary judgment was "misleading," "disingenuous," and "prematurely filed." (Id. at 9-10.) The court reasoned that RCG's summary judgment motion was at best premature because RCG should have known that without corroborating evidence, Buist's bare testimony was insufficient to meet its burden of proof. (Id. at 10.) The court also described RCG's conduct as "somewhat disingenuous" because RCG neglected to inform the court that Buist had made modifications to the Wit DSM's source code. (Id. at 11.) The court found RCG's conduct sanctionable and struck Buist's summary judgment declaration, denied RCG's motion for summary judgment without prejudice, and ordered RCG to "pay the costs for TT's software programming consultant and costs and attorneys' fee associated with [the sanctions motion]." (Id. at 12.)

Seven months later, on October 29, 2007, RCG moved to vacate the sanctions order arguing that its conduct did not meet the standard for sanctions and that TT's request for $300,000 in fees and costs was unreasonable and punitive. (R. 183.) On July 17, 2008, the court denied RCG's motion and reemphasized that, "had RCG been forthcoming, TT would

3

not have been required to hire the consultant, depose [the Buists], or spend time drafting a motion for sanctions." (R. 225 at 4.) In denying RCG's motion, the court authorized TT to recover fees and cost related to three different categories: (1) TT's programming consultant; (2) TT's deposition of the Buists; and (3) TT's prosecution of the sanctions motions. (Id.) Because of the amount in controversy, more than $300,000, the court ordered the parties to comply with Local Rule 54.3 and then to brief the issue of reasonableness. (Id.)

TT filed its opening memorandum on October 15, 2008, in support of its fees and costs. (R. 244.) The following year, on February 6, 2009, the assigned district judge referred the matter of reasonableness of the fees and costs to this court and noted his skepticism that $300,000 could be at stake "for a single discovery dispute." (R. 262, 267.) This court ordered RCG to file a response to TT's memorandum by April 8, 2009, and TT to file its reply by April 29, 2009. (R. 269.) This court then held a hearing on the issue of reasonableness on May 20, 2009, and heard oral arguments. (R. 292, 301.)

**Analysis**

TT is entitled to recover $289,234.39 as reasonable fees and costs it incurred as a result of RCG's misconduct. On March 14, 2007, the court granted TT's motion for sanctions under Federal Rule of Civil Procedure 37(b)(2) and the inherent powers of the court to manage its cases in a fair and expeditious manner. (R. 142.) Pursuant to Rule 37(b)(2)(C), "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure . . . ."

*See also Bryant v. Gardner*, 587 F. Supp. 2d 951, 968 (N.D. Ill. 2008). In this case, the court ordered RCG to pay the necessary expenses TT incurred as a result of RCG's misconduct.

As an initial matter, the court notes that the contentiousness and obvious mutual mistrust that the parties demonstrated during the underlying sanctions proceedings have leached into the current briefs regarding the reasonableness of TT's fees and costs stemming from the sanctionable conduct. Most notably, RCG has taken the position that TT should not be awarded any fees or costs despite Judge Moran's sanctions order because it characterizes TT's fee petition as "bloated," "exorbitant," and "itself subject to sanctions." (R. 275 at 1.) RCG accuses TT of greediness, and urges this court to punish TT by denying the fee petition in its entirety. This court wholly disagrees with RCG's characterization of TT's fee petition, and for the reasons described below, finds that the bulk of the requested fees and costs are reasonable. For TT's part, it argues that RCG has waived any challenge to the reasonableness TT's expenses because, it says, RCG refused to comply in good faith with Local Rule 54's mandate that the parties attempt to reach an agreement regarding fees and costs. But RCG raised a number of objections to TT's claimed fees before TT filed the fee petition, and even though those arguments are largely meritless, this court does not consider them waived.

The remaining questions before the court are how much did TT spend because of RCG's misconduct and how much of that expenditure is reasonable? According to the July 17, 2008 order, TT is entitled to recover attorney fees and costs related to three categories:

5

(1) retention of a program consultant; (2) deposition of the Buists; and (3) litigation of the sanctions motion. (R. 225.) In order to answer the remaining questions, this court reviewed the supporting documents TT submitted and examined each page and each line item. If the court could not determine whether a line-item fee or cost was attributable to RCG's misconduct and whether it was reasonable, the item was not included in the total amount awarded.

### A. Computer Expert Fees and Cost

As for the first category of expenditure, TT is entitled to recover the full $52,477.08 it spent on computer expert Evan Dygert ("Dygert"). TT paid this sum to Dygert for services rendered between March 9 and October 26, 2006. RCG contends that the court should reject TT's request for fees and costs related to Dygert because TT would have expended $52,477.08 even if RCG had not moved for summary judgment. RCG points out that Dygert performed work for and billed TT twice in March 2006 (on March 9 and 16), more than a month before RCG filed its summary judgment motion.

Although RCG's argument has facial appeal, it lacks substance, primarily because Judge Moran could not have been more clear that TT is entitled to recover for all of its reasonable fees and costs incurred as a result of Dygert's work trying to identify and understand the hidden modifications in the Wit DSM source code. The court specifically ordered RCG, without identifying any limitations, "to pay the costs for TT's software programming consultant." (R. 142 at 12.) In denying RCG's motion to vacate the original

sanctions award, Judge Moran reiterated that with respect to Dygert, "we specifically directed RCG to pay his fees, not limiting those fees to the time it took him to locate the modifications of the code." (R. 225 at 3-4.) Nowhere did Judge Moran suggest that the sanctions award should be limited to costs incurred after RCG filed its disingenuous summary judgment motion.

In any event, TT has shown that all of Dygert's work was impacted by or resulted from RCG's misconduct. The misconduct TT alleged and the court sanctioned was RCG's misrepresentations regarding Wit DSM, which began as early as February 2006. Specifically, on February 16, 2006, RCG produced images of print outs of a version of the DSM code allegedly from 1998 and 1999, without informing TT of Buist's modifications to other versions of the code. Thus Dygert spent time examining those codes in March 2006 without knowing that RCG planned to misrepresent that other versions of the code revealed critical functionality. At a settlement meeting in April 2006, RCG ran a demonstration of the modified source code for TT to show its supposed single-action-order entry function, again without revealing the crucial fact that Buist modified the original codes after TT obtained the '102 and '304 patents. Because RCG took the position that the Wit DSM code included the single-action-order function before it moved for summary judgment, TT was forced to examine that theory even before the motion was filed. Thus the fact that RCG did not move for summary judgment until after Dygert was retained is irrelevant.

7

RCG argues in the alternative that TT is not entitled to recoup its expenses related to Dygert's work because some of his bills are for work done after the sanctions motion was fully briefed, some is charged to the *eSpeed* litigation, and because RCG characterizes Dygert's billing as insufficiently specific. First, even though Dygert performed and billed TT $9,804.94 for consultant work on October 26, 2006–which is after TT filed its motion for sanctions on August 10, 2006–the record shows that TT filed its reply in support of its sanctions motion on October 26, 2006. TT's supporting documentation shows that TT incurred $9,804.94 in expert fees in connection with preparing its reply brief in support of its sanctions motion, and therefore is recoverable. As for Dygert's time charged to the *eSpeed* litigation, as explained above, this case was consolidated with the *eSpeed* case (and others) for purposes of discovery. To the extent that RCG objects to bills charged to the *eSpeed* litigation on the supposition that such work was somehow unrelated to this case, that suggestion lacks credulity. The purpose of consolidating cases for discovery is to prevent duplication of work that is relevant to more than one matter, and Dygert's billing work under the label *eSpeed* is an inconsequential administrative decision. As for RCG's complaint that Dygert's bills are insufficiently detailed, this court finds TT's documentation supporting its expert-related expenses specific enough to demonstrate that Dygert's billed time was connected to work that was either hampered by, or made necessary by, RCG's sanctioned conduct. For all of these reasons, TT is entitled to recover the full amount associated with Dygert's fees and costs in the amount of $52,477.08.

**B. Deposition Fees and Costs**

TT is entitled to recover $150,703.56 in fees and costs related to the second category of expenditure: TT's work preparing for and deposing the Buists, including attorney fees, travel costs, and deposition expenses. In responding to what appeared to be a significant development in this action (RCG's new assertions regarding the 1998 & 1999 Wit DSM source code), TT sought to obtain and review all materials connected to Buist's declaration and his opinion that the Wit DSM contained the single-action-entry function before TT obtained its patents. TT's legal team then traveled from Chicago to New York to depose the Buists on June 22 and 23, 2006. TT argues that it spent a total of $156,762.31 to investigate Buist's assertions and to prepare for the two depositions.

RCG contends that this court should reject TT's request for fees and costs related to the Buists' depositions because, it says, TT would have deposed them notwithstanding the summary judgment motion. But that is an issue that has already been resolved against RCG. In denying RCG's motion to vacate the sanctions order, Judge Moran found that absent RCG's misconduct, "TT would not have been required to hire the consultant, depose Mr. Buist or his son, or spend time drafting a motion for sanctions." (R. 225 at 12.) Judge Moran specifically stated that the costs of the Buist depositions "are properly attributable to RCG's conduct and therefore are properly borne by RCG." (Id.) That finding constitutes the law of the case, and the current fee petition does not give RCG a platform to rehash resolved arguments.

Turning to the reasonableness of the deposition-related expenses, according to TT, the $156,762.31[1] it spent in fees and costs to investigate RCG's assertions and to expose RCG's misconduct can be broken down as follows:

| | |
|---|---|
| Attorney Fees | $93,855.00 |
| Paralegal Fees | $27,796.25 |
| Travel Cost | $16,938.65 |
| Court Reporter Cost | $18,172.41 |
| Total | $156,762.31 |

TT has provided documentation supporting these expenditures. (R. 285, Exs. N-D, –E, AA.)

Based on the nature and the complexity of the misconduct in question and the fact that the court has already ruled that TT is entitled to recover fees and costs related to the Buists' depositions, the court finds that the detailed expenses are reasonable except for the following paralegal line items:

| Date | Description of Work | Amount |
|---|---|---|
| 06/09/06 | preparation of Buist witness kit | $1,803.75 |
| 06/10/06 | preparation of Buist witness kit | $323.75 |
| 06/11/06 | preparation of Buist witness kit | $647.50 |
| 06/12/06 | preparation of Buist witness kit | $1,803.75 |
| 06/13/06 | preparation of Buist witness kit | $925 |

---

[1] This amount reflects the total amount minus $108.21 TT withdrew from its request. (R. 285 at 26.)

| 06/14/06 | preparation of Buist witness kit | $555 |
|---|---|---|
| | Total | $6,058.75 |

The court cannot determine whether the particular task the paralegal performed on various dates warrants an award of $6,058.75 in fees. One reasonable inference the court might draw from the task description is that the paralegal prepared documents to be reviewed by TT's attorneys and/or to be used at the Buists' deposition. But because the paralegal used more descriptive statements when he was engaged in preparation work for the Buists' depositions on other dates, the court cannot reasonably infer that he was engaged in similar work on the days he simply noted "Buist witness kit." (R. 285, Ex. AA at 6.) Accordingly, this court omits from the sanctions award the paralegal fees represented by the "Buist witness kit" time entries.

RCG argues that under Federal Rule of Civil Procedure 54, TT is not entitled to recover its expenses for its lawyers and Dygert to travel to the Buist depositions. Similarly, it argues that TT may recover court reporter expenses only in the amount of $3.30 per page of deposition transcript.[2] But as TT points out, the district court sanctioned RCG pursuant to its inherent powers to manage litigation and Rule 37, which provides for sanctions where a party does not cooperate in discovery, not Rule 54(d), which outlines the limits on fees and costs available to a prevailing party post-judgment. The cases RCG cites to support its

---

[2] RCG also nitpicks TT's deposition-related costs for airfare and accuses TT of double-billing. This court has considered those arguments and finds them unsupported by the record.

argument that TT's travel and deposition costs should be limited all stem from Rule 54. But courts in this circuit (and others) have found that attorney travel costs are fair game in the sanctions context. *See, e.g., Barrett v. Brian Bemis Auto World*, 230 F.R.D. 535, 537 (N.D. Ill. 2005); *Brown v. Walker*, 2008 WL 4809691, at **2-3 (N.D. Ind. Oct. 31, 2008); *see also Biovail Labs., Inc. v. Ahcen Pharms., Inc.*, 233 F.R.D. 648, 654 (C.D. Cal. 2006); *Wirerope Works, Inc. v. Travelers Excess & Surplus Lines Co.*, 2008 WL 2073375, at *4 (E.D. Pa. May 12, 2008). Because the purpose of the sanctions is both to punish RCG's past conduct and to deter future misconduct, *see Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976), this court finds it appropriate to order RCG to reimburse TT's full court reporter costs rather than to limit the award artificially by the cost-caps that apply to awards under Rule 54.

### C. Sanctions Motion Fees and Costs

TT is entitled to recover $86,053.75 of the $103,303.75 it seeks in connection with the third category of expenditure: fees and costs related to litigating its motion for sanctions. This court notes that RCG has lodged a number of broad complaints regarding the nature and quality of TT's billing, arguing that it improperly seeks reimbursement for wholly or partially redacted time entries, for "mixed-entry" or improperly categorized time entries, and for fees it characterizes as insufficiently documented. Its objection to TT's redacted time entries is puzzling, given TT's representation that it supplied RCG with unredacted versions of its time sheets before RCG filed its response. Moreover, RCG has not identified any of the particular

12

entries it finds objectionable. This court has carefully scrutinized the documentation supporting TT's claimed fees and costs, and finds that with the few exceptions described below, TT has demonstrated that its fee request is reasonable. At the outset, the court subtracts the following two line items from the total sought in connection with the sanctions motion:

| Paralegal | Date Service Rendered | Amount |
|---|---|---|
| Aaron Purser | 11/16/06 | $1,480 |
| Aaron Purser | 11/17/06 | $1,387.50 |
| | Total | $2,867.50 |

The court subtracts $2,867.50 from the total sought because TT failed to provide sufficient information–and the description of the services rendered by the paralegal on the time sheets failed to show–that these fees were directly related to preparing and filing the motion for sanctions.

**1. July 2006 to August 2006**

Next, in order to properly assess whether the remaining amount sought by TT is reasonable, the court must examine TT's actual filings. The record shows that on August 10, 2006, TT filed what is essentially a two-page motion, titled "Motion for Sanctions Based on RCG's Fabrication of Prior Art in Support of its Motion for Summary Judgment of Invalidity," and a 28-page supporting memorandum of law with 12 exhibits. The attorney time sheets (July 5 to August 15, 2006) provided by TT (R. 285, Ex. AA) show that TT

13

incurred attorney fees in the amount of $24,417.50 to prepare, file, and present the motion for sanctions on August 15, 2006.

The time sheets show that TT first had to consider whether to move for sanctions, and then after it decided to pursue this option, TT's attorneys spent time compiling the relevant information and exhibits, drafting the motion and the supporting memorandum of law, and presenting the motion to the court. With respect to considering the sanctions option, TT incurred fees in the amount of $783.75 for 2.75 attorney hours on July 5 and 6, 2006. As to compiling the relevant information, TT incurred fees in the amount of $3,278.75 for 12 attorney hours (July 11-12, 14, 19, 21, and 31, 2006). As to drafting the motion, TT incurred fees in the amount of $5,470, for 18.5 attorney hours (July 9-10, 12-14, 24, and 27, and August 1, 4-5, 2006). As for drafting the memorandum of law and presenting the motion, TT incurred fees in the amount of $14,885 for 61.75 hours (August 3-4, 7-10, and 15, 2006).

Based on the court's examination of the time sheets, these fees and hours are reasonable, except for the fees TT spent drafting the two-page motion (R. 90.) In order to prepare the actual motion for sanctions, TT asserts that its attorneys spent a total of 18.5 hours and billed $5,470 in fees. Of these 18.5 hours, TT's attorneys spent 12.5 hours (July 9, 10, 13-14, and August 5, 2006), totaling $3,787.50, to draft a simple 2-page motion. This fee amount of $3,787.50 is excessive and unreasonable. The court recognizes that its reading of the time sheets may be too simplistic, but TT did not offer explanations or other details to demonstrate that these charges are reasonable. The court finds that an award of $570 (two

14

attorney hours) is reasonable for the drafting of the motion. With that reduction in place, TT is entitled to $21,200 for preparing, filing and presenting its motion for sanctions against RCG.

**2. August 2006 to October 2006**

The court must also examine the fees TT incurred to litigate and prosecute the motion for sanctions. The court ordered RCG to file a response to TT's sanctions motion by September 14, 2006. (R. 96.) A week before its response was due, RCG moved for an extension of time to conduct additional discovery in order to prepare its response. (R. 98.) TT opposed the motion and argued that RCG was not entitled to additional discovery and that RCG had ample time (five weeks) to file a response to the sanctions motion. (R. 99.) The court denied RCG's request to conduct additional discovery prior to filing a response, but granted RCG an extra week to file its response. (R. 101.) Three days before its response was due, on September 18, 2006, RCG again sought an extension of time to file a response, and TT again argued that RCG should be compelled to file its response immediately. (R. 102, 104.) The court granted RCG until October 5, 2006, to file its response. (R. 106.)

In its response to the sanctions motion, RCG went on the offensive. It accused TT of misleading the court by filing the sanctions motion and also accused TT of defrauding the United States Patent Office when it submitted its application for the patents-in-suit. (R. 107.) In support, RCG attached 71 pages of exhibits, including Buist's 10-page declaration denying that RCG ever instructed him to alter evidence, that he made any misleading statements, or

15

that he tried to conceal any alterations he made to the source codes in question. RCG also attached an 8-page declaration of Dr. Stephen Lesavich, an attorney of record for RCG, denying that he ever instructed Buist to alter evidence in favor of RCG and maintaining that Buist's Wit DSM constitutes prior art invalidating TT's patents. (Id.) In further support, RCG submitted the declaration of its lead attorney as a sealed document. (R. 108.) TT filed a 13-page reply addressing each of RCG's arguments and assertions on October 26, 2006. (R. 107, 109.)

From the time TT presented its sanctions motion on August 15, 2006, until the time it filed its reply on October 26, 2006, TT asserts that it incurred attorney fees in the amount of $61,377.50 for a total of 196.75 attorney hours. Of this amount, TT spent $3,021.25 (12.5 attorney hours) responding to RCG's multiple requests for extension of time and $58,356.25 (184.25 attorney hours) preparing and filing its reply brief in support of the sanctions motion.

Having examined the relevant time sheets, the court finds that TT is entitled to $50,212.50 in fees in connection with its prosecution of the sanctions motion. The court subtracts the following line items because based on the description of the services rendered, these items are either duplicative or unrelated to the motion for sanctions:

| Attorney | Date Service Rendered | Amount |
| --- | --- | --- |
| Jennifer Kurcs | 09/15/06 | $385 |
| Leif Sigmond | 10/09/06 | $1,980 |
| Leif Sigmond | 10/10/06 | $1,210 |

16

| Leif Sigmond | 10/13/06 | $1,760 |
| Leif Sigmond | 10/20/06 | $2,640 |
| Leif Sigmond | 10/23/06 | $1,760 |
| Leif Sigmond | 10/24/06 | $1,430 |
| | Total | $11,165 |

Also, the court recognizes that TT incurred $15,225 in connection with three of its attorneys revising its reply brief, on October 25 and 26, 2006, spending a total of 48.5 hours. The court will not discount the fees incurred for these revisions because the reply was significant to TT's litigation posture and it was entitled to spend the time to perfect its reply brief. The court also considers the fact that TT did not know whether its fees would be reimbursed at a later time and would have spent what it deemed to be reasonable in order to protect its patents.

**3. October 2006 to May 2008**

Finally, the court must examine the fees and costs TT incurred after it filed its reply brief on October 26, 2006, and after the court agreed with TT that it is entitled to recover certain fees and costs. On November 10, 2006, RCG moved to strike TT's reply to its sanctions motion. (R. 112.) Three days later, at a cost of $997.50, TT filed a response to the motion to strike, which the court denied in its order dated March 14, 2007, in which it granted in part and denied in part TT's motion for sanctions. (R. 141, 142.)

More than seven months later, on October 29, 2007, RCG filed a three-page motion to vacate the sanctions ruling and raised alarm that TT was seeking $300,000 in fees.

17

(R. 183.) From October 30, 2007, to May 21, 2008, TT incurred fees in the amount of $13,643.75 responding to that motion. Specifically, TT incurred fees in the amount of $1,947.50 for 7.75 attorney hours (October 30 and November 13, 2007) related to its 10-page response to the motion to vacate. (R. 186.) RCG filed an 11-page reply with 54 pages of exhibits on November 30, 2007. (R. 187.) Of course, this reply–more detailed and substantive than the original motion to vacate–caused TT to file a seven-page sur-reply to defend its award of fees and costs and to identify what TT deemed to be misrepresentations made in RCG's reply brief. (R. 188.) To file its sur-reply TT incurred $4,008.75 for 15.75 attorney hours (December 12-14 and 17, 2007).

Then on May 10, 2008, RCG filed a three-page response to TT's sur-reply with 20 pages of exhibits, including a declaration from RCG's counsel. (R. 204.) TT then moved to file a declaration from one of its attorneys to counter RCG counsel's declaration. (R. 205.) TT incurred an additional sum of $7,687.50 for 22.75 attorney hours (May 12-15 and 21, 2008) to prepare the motion and the declaration and to present the motion on May 21, 2008. Two months later, on July 17, 2008, the court denied RCG's motion to vacate. (R. 224, 225.) Based on the record as well as the time sheets offered by TT, the court finds that TT is entitled to recover $997.50 it spent to protect its reply brief and $13,643.75 it spent to litigate RCG's attempt to vacate the court's sanctions order.

**Conclusion**

For the foregoing reasons, TT is entitled to recover $289,234.39 from RCG:

| Category of Reimbursement | Amount |
|---|---|
| Expert Fees and Cost | $52,477.08 |
| Deposition Fees and Cost | $150,703.56 |
| Sanctions Motion Fees | $86,053.75 |
| Total | $289,234.39 |

RCG is ordered to pay this amount to TT by July 9, 2010. The parties are also ordered to appear for a status hearing on July 9, 2010, at 11:00 a.m.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**